In re Stanley Wayne
ERICKSON, Debtor.

Stanley Wayne ERICKSON, Plaintiff,

v.

DISTRICT COURT OF the STATE OF COLORADO, Defendant.

Bankruptcy No. 88 B 3124 A.
Adv. No. 88 E 1083.

United States Bankruptcy Court,
D. Colorado.

Aug. 14, 1989.

---

George T. Carlson, Denver, Colo., for debtor/plaintiff.

Carol Mullins, Asst. Atty. Gen., Denver, Colo., for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

CHARLES E. MATHESON, Chief Judge.

This matter is before the Court on the Motion for Summary Judgment, With Citation to Authorities ("Motion for Summary Judgment") filed by Stanley Wayne Erickson ("Debtor" or "Plaintiff") and the briefs filed by both parties. The parties have stipulated that the issue presented in Plaintiff's Motion for Summary Judgment is dispositive of the case and have requested that this Court rule thereon in the normal course. Accordingly, this Order issues.

## I. FACTS

The facts which are pertinent to this decision and which are undisputed by the parties are as follows:

1. On March 15, 1988, Debtor filed a voluntary petition pursuant to Chapter 13 of Title 11, United States Code ("Bankruptcy Code" or "Code"), and listed Defendant, Jefferson County District Court, as an unsecured creditor in the amount of $1,300.00.

2. Prior to the filing herein, Debtor pled guilty to certain criminal charges, the penalty for which included one to four years prison term. Debtor was sentenced to a term of six months in jail, which the court recommended be served in a work release program, and to five years of probation. The terms of Debtor's probation included payment to the court of $75.00 for the Victim Compensation Fund, $2,857.13 in restitution ($2,484.98 of which was to compensate the victims for their daughter's burial expenses),[1] $100.00 supervision fee, and $15.00 court costs—for a total of $3,047.13 to be paid at the rate of $50.00 per month.

3. The Defendant, despite proper notice, filed no objection to confirmation of the Chapter 13 plan. The Defendant was included among the Class 4 unsecured creditors who were to receive a pro rata share of $100.00 under the plan.

4. On June 7, 1988, the United States Bankruptcy Court for the District of Colorado entered its order confirming the Debtor's Chapter 13 plan.

5. Debtor has not made a payment to Jefferson County District Court since the filing of this Chapter 13.

6. Defendant contends that Debtor is in violation of his probation and sought revocation of the probation order. The District Court set a hearing for December 19, 1988.

7. On December 2, 1988, Debtor filed his Complaint for Injunction ("Complaint") pursuant to 11 U.S.C. § 105(a).

---

**1.** This language, that the restitution payments are intended to compensate the victims, is taken directly from the answer filed by Defendant, Paragraph 4.

8. On December 20, 1988, upon Debtor's motion for restraining order and following hearing thereon, this Court entered an order enjoining the Defendant District Court from revoking Debtor's probation.

## II. ISSUES AND SUMMARY OF ARGUMENTS

The issues presented by the Motion for Summary Judgment on Debtor's Complaint are (1) whether the Debtor's criminal restitution obligation is a debt which is dischargeable pursuant to 11 U.S.C. § 1328(a); and (2) whether, upon answering the foregoing affirmatively, the Bankruptcy Court can permanently enjoin the state from revoking probation of the Debtor due to nonpayment of restitution obligations when the plan has been confirmed but an order of discharge has not entered.

The Debtor argues that *In re Cullens*, 77 B.R. 825 (Bankr.D.Colo.1987), previously decided by this Court, is dispositive of the issues. Defendant, on the other hand, argues that this Court should reconsider its prior decision in light of the contrary authority of other decisions from this District. *In re Ferris*, 93 B.R. 729 (Bankr.D.Colo. 1988); *In re Johnson*, 32 B.R. 614 (Bankr. D.Colo.1983). Because there are no material facts in dispute, and in light of the parties' stipulation that the Motion for Summary Judgment is dispositive of the issue, summary judgment may be granted as a matter of law.

## III. ANALYSIS AND CONCLUSIONS OF LAW

A. *Are Criminal Restitution Payment Obligations Dischargeable Pursuant to 11 U.S.C. § 1328(a)?*

1. Background.

The question whether payments in the nature of criminal restitution are dischargeable in bankruptcy has been addressed in different procedural contexts by a number of courts, including the United States Supreme Court in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). As a result, there are as many and divergent analyses, particularly as to whether restitution obligations are "debts," as there are courts which have visited this question. Generally, the analytical construct includes first, a determination whether restitution payments are "debts" as defined by section 101(11) and second, if they are "debts," whether they are dischargeable. Regardless of the specific approach used, the majority of courts have concluded that restitution payments are not "debts" and, therefore, are non-dischargeable whether in Chapter 13 or Chapter 7. *See, In re Johnson–Allen*, 871 F.2d 421, 424 (3rd Cir.1989), *reh'g denied* (April 27, 1989), citing *In re Kohr*, 82 B.R. 706, 712 (Bankr.M.D.Penn.1988); *In re Thompson*, 77 B.R. 646, 648 (Bankr.E.D.Tenn.1987); *In re Oslager*, 46 B.R. 58, 82 (Bankr.M.D. Penn.1985); *In re Pellegrino*, 42 B.R. 129, 132 (Bankr.D.Conn.1984); *In re Johnson*, 32 B.R. 614, 616 (Bankr.D.Colo.1983); *In re Button*, 8 B.R. 692, 694 (Bankr.W.D.N.Y. 1981). *See also, In re Ferris*, 93 B.R. 729 (Bankr.D.Colo.1988). This divergence in analyses, both in this District and without, is indicative of the difficulty this question presents.

This Court has also previously examined this issue in *In re Cullens, supra*. In *Cullens*, a Chapter 13 debtor sought to discharge a criminal restitution obligation pursuant to his confirmed Chapter 13 plan. As in the instant case, the governmental agency had not objected to confirmation. *Cullens*, without explicitly deciding whether restitution payments are "debts," relied on the weighty precedent of the majority opinion of *Kelly v. Robinson, supra*, which held that 11 U.S.C. § 523(a)(7) excepts from a Chapter 7 discharge any payment obligation a state criminal court imposes as part of a criminal sentence. *Id.* at 107 S.Ct. at 361. *Cullens* then went the next step and accepted the invitation of the *Kelly* dissent which opined that the Supreme Court's solution left open the possibility that such restitution obligations are dischargeable under Chapter 13. *See, Kelly v. Robinson, supra* 107 S.Ct. at 366 n. 6. This Court interpreted the plain language of section 1328(a) to provide a broad discharge of all debts, (including fines, penal-

ties and forfeitures as enumerated under section 523(a)(7)), excepting only alimony, maintenance and support, (section 523(a)(5)), and debts of the types specified under section 1322(b)(5) dealing with secured claims extending beyond the date of the plan. *See, In re Cullens, supra* at 827 and 828.

Since *Cullens,* two significant decisions have been handed down by the Supreme Court and Third Circuit, respectively. Each influences this Court to render this opinion rather than rest on *Cullens.*

2. Are criminal restitution obligations "debts" which are dischargeable under 11 U.S.C. § 1328?

*Kelly v. Robinson,* in sidestepping the issue of whether restitution obligations are "debts," went so far as to express "serious doubts" that Congress intended that they be considered "debts." *Kelly v. Robinson, supra* 107 S.Ct. at 361. What is most remarkable about the majority opinion in *Kelly* is that while in one breath *Kelly* fails to decide whether criminal penalties are debts, in the next it launches into an analysis of section 523(a)(7) and glosses over a very basic requisite contained in the language of section 523(a). Only a "debt" may be excepted from discharge. Following this line of logic, either restitution is not a debt and the Bankruptcy Code does not apply in its entirety, or it is a debt and section 523 applies and the interpretation which the Supreme Court has given to section 523(a)(7) will stand. Without belaboring the point, logically, one does not get to an analysis of section 523 without first reaching the determination that the obligation which is sought to be discharged is a "debt" within the meaning of section 101(11).

The "serious doubts" expressed by the Court in *Kelly v. Robinson* arose out of the Court's review of the cases dealing with the dischargeability of criminal fines and penalties under the predecessor Bankruptcy Act. The Court recognized that by the "clear statutory language" of the Act, *id.* 107 S.Ct. at 358, criminal fines and penalties were "debts" which could have been discharged. Nonetheless, courts had al-most uniformly ruled that such obligations were *not* "debts" for such purposes. "Thus, Congress enacted the Code in 1978 against the background of an established judicial exception to discharge for criminal sentences, including restitution orders, an exception created in the face of a statute drafted with considerable care and specificity." *Id.* at 359.

The United States Supreme Court, in *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. ——, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), indirectly revisited *Kelly v. Robinson* in the context of statutory interpretation through reference to pre-Code practice. In *Ron Pair* the issue before the Court was whether 11 U.S.C. § 506(b) entitles a nonconsensual oversecured creditor to receive postpetition interest.

The respondents in *Ron Pair* urged that pre-Code practice was at odds with the conclusion that the *Ron Pair* Court would ultimately reach (that section 506 entitles a creditor to receive postpetition interest on a nonconsensual oversecured claim allowed in a bankruptcy proceeding) and that the decisions in *Kelly v. Robinson, supra,* and *Midlantic National Bank v. New Jersey Department of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), required the *Ron Pair* Court to interpret section 506 in light of and consistent with that pre-Code practice. *Id.* 109 S.Ct. at 1031. The *Ron Pair* Court disagreed and justified its approach in *Kelly* as follows:

We reached this conclusion (that a restitution obligation, imposed as part of a state criminal sentence, was not dischargeable in bankruptcy) by interpreting § 523(a)(7) of the Code, 11 U.S.C. § 523(a)(7), as preserv[ing] from discharge any condition a state criminal court imposes as part of a criminal sentence. 479 U.S. at 50. We noted that the Code provision was "subject to interpretation," *ibid.,* and considered both legislative history and pre-Code practice in aid of that interpretation. But in determining that Congress had not intended to depart from pre-Code practice in this re-

gard, we did not rely on a pale presumption to that effect. We concluded that the pre-Code practice had been animated by a "deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings," *id.* at 47, 107 S.Ct. at 360, which has its source in the basis [sic] principle of our federalism that "the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Id.* at 49, 107 S.Ct. at 360–61. In *Kelly*, as in *Midlantic*, pre-Code practice was significant because it reflected policy considerations of great longevity and importance. *Id.* 109 S.Ct. at 1032.

The *Ron Pair* Court, while seeming to close discussion on the issue by the foregoing, then reopened it by observing "*Kelly* and *Midlantic* make clear that, *in an appropriate case*, a court *must* determine whether Congress has expressed an intent to change the interpretation of a judicially created concept in enacting the Code." *Id.* 109 S.Ct. at 1032 (emphasis added).

This Court must now revisit *Cullens, supra,* and its interpretation of sections 1328(a) and 523(a)(7), considering the *Ron Pair* mandate, to determine whether criminal restitution obligations are dischargeable under section 1328(a). Is this "an appropriate case" where Congress, in enacting the Code, expressed an intent to change the interpretation of a judicially created concept? This Court opines that it is.

This pursuit must begin with a review of the legislative history of § 523(a)(7). In 1973 the Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93–137, 93rd Cong., 1st Sess., 1 and 2 (1973), set forth a proposed revision of the Act. This revision, although never enacted, is the foundation upon which the Code was built. It is in that draft, particularly in section 4–506, that section 57(j) of the Act (dealing with the disallowance of fines and penalties to or for the benefit of a governmental unit) is incorporated into what ultimately became section 523(a) of the Code. The Com-

mission Report describes this incorporation of section 57(j):

18. *Clause (9) of subdivision (a) is new. It is intended to clarify and rationalize the dischargeability status of debts for nonpecuniary loss, i.e., debts for fines, penalties, or forfeitures* or for multiple, punitive, or exemplary damages. Under the present Act it has become "well settled" that "fines and penalties are not affected by a discharge." 1A Collier ¶ 17.05, at 1586 (1967). *Such debts* have been regarded as not dischargeable because they are not provable. However, debts owed to governments for fines, penalties, and forfeitures are expressly not allowable under § 57 of the present Act, notwithstanding the general rule that nonprovable debts are not subject to allowance ...

19. The proposed Act abandons the concept of "provability," see Note to section 4–403, and permits all debts which can be liquidated as of the date of the petition (and certain other debts) to be allowed and discharged unless expressly excepted. The proposed Act does not disallow debts for nonpecuniary losses *but subordinates* their payment. See §§ 4–403(b), 4–406(a)(3). This clause denies dischargeability only to a fine for the benefit of a governmental unit. All other nonpecuniary *debts, including a fine payable to a governmental unit but for the benefit of a private individual,* are to be discharged unless they are expressly nondischargeable under another clause of this subdivision, *or as considered in the preceding paragraph, arise from the same course of conduct as compensatory damages that are nondischargeable.* H.R. Doc. No. 93–137, 93rd Cong. 1st Sess. 2 (1973) reprinted in Appendix 2, *Collier on Bankruptcy,* pg. 141 of Comm. Report (15th Ed.1988) (emphasis added).

The notes from the Commission Report further elaborate:

*Clause (3) of subdivision (a)* replaces § 57j of the former Act. Section 57j disallows fines, penalties, and forfeitures owed to governments. This clause sub-

ordinates such claims. Only in the rare case in which all allowed and unsubordinated claims are paid in full will the change work a different result. However, in the case of a solvent estate, it does prevent the debtor from obtaining the windfall of a disallowance intended only to benefit his creditors. To the extent that the subordinated claims are nondischargeable, the change saves the claimants in the case of a solvent estate the needless act of proceeding against the debtor after discharge. *Id.* at 116.

The final version of the Code incorporated the essence of the provisions of section 4–506 into section 523(a)(7). Criminal fines and penalties are to be recognized as "debts" which, in a Chapter 7 case, are now among those debts unequivocally excepted from discharge by section 523(a)(7), *Kelly v. Robinson, supra,* and are subordinated to the payment of the more traditional creditor claims by section 726(a)(4).

Recently the Third Circuit, in *In re Johnson–Allen, supra,* rendered a well-reasoned opinion on the issue now before this Court. The *Johnson–Allen* Court identified each of the arguments raised in support of the proposition that restitution payments are *not* debts.[2] It responded to each and ultimately concluded that criminal restitution payments are "debts," and as such are dischargeable in Chapter 13 pursuant to 11 U.S.C. § 1328(a). The court reasoned that Congress, when it enacted the Code and expanded the definition of claim, in-

tended the concept of "claim," (section 101(4)) and, by association, the concept of "debt" as a liability on a claim (section 101(11)), to be given the "broadest possible definition ..., that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court." *In re Johnson–Allen, supra* at 424, citing H.Rep. No. 595, 99th Cong., 2d Sess. 309, reprinted in 1978 U.S.Code Cong. & Admin. News at 5963, 6266; S.Rep. No. 989, 95th Cong., 2d Sess. 21–22 reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5807–08.

■ The legislative history of 11 U.S.C. § 101(14) and the expansive definition of a claim set forth within it, cited in *Johnson–Allen, supra,* together with the history behind the development of section 523(a)(7), inspire this Court to concur with the Third Circuit and adopt its view in its entirety. *Criminal restitution payments are debts.* Congress intended "debt" and "claim" to encompass all legal obligations of the debtor and, so long as any entity or person has a right to enforce the obligation, whether it be the victim or the state, then the restitution obligation constitutes a debt.[3] *Accord, In re Johnson–Allen, supra* at 425–426.

The language in sections 523(a) unambiguously excepts from a Chapter 7 discharge, inter alia, debts for criminal fines and penalties, including restitution obligations. A Chapter 13 discharge, however, *upon com-*

---

**2.** The Third Circuit summarized the arguments as follows:

(1) the victim does not personally possess a right to the restitution payment as ordered by the court; (2) a discharge of restitution interferes with state criminal proceedings, violating well-established principles of federalism; (3) Congress revised the Code in 1978 against the background of a judicially created exception for the discharge of criminal penalties; (4) discharge of the restitution obligation would create a "haven for criminals" in contravention of congressional intent; and (5) restitution is intended primarily to rehabilitate the offender and not to compensate the victim. *In re Johnson–Allen, supra* at 424.

**3.** The alternative, to find that restitution is not a debt and, thereby, end the analysis is enticing. However, once we accept the Supreme Court's

interpretation in *Kelly,* as we are bound to do, that section 523(a)(7) codified the judicially created exception to discharge for fines, then (1) the express language of section 523(a)(7), particularly that it must be a "debt," (2) the specific references in the Code to the fines and penalties, and (3) the particular deletion of those references in the context of Chapter 13 in section 1328(a), combine to break the trance of that argument's allure. One can only conclude that restitution obligations are debts within the meaning of 11 U.S.C. § 101(4) and (11). To conclude to the contrary not only conflicts with the clear language of the Code, it would also deprive the State of the right to share as a claimant in distributions out of a Chapter 13 estate or, on a subordinated basis, from a debtor's Chapter 7 estate pursuant to Code § 726(a)(4).

*pletion of payments*, only excepts from discharge debts in the nature of alimony, maintenance and support, and certain secured payments. All other debts are discharged. Accordingly, the Court must conclude this is that appropriate case where Congress intended to change a judicially created exception and did so by expressly permitting a debtor to discharge a debt in a *completed* Chapter 13 even though it is a fine, penalty or forfeiture payable to or for the benefit of a governmental unit and is not compensation for actual pecuniary loss.[4]

At first blush, this conclusion appears to create inconsistency in the Code. Restitution obligations are debts which are nondischargeable in Chapter 7 and dischargeable in Chapter 13. But, when viewed from the perspective of the victim, this interpretation achieves uniformity, not inconsistency. Victims, who become the beneficiaries of restitution orders, most assuredly have debts which would be excepted from discharge in Chapter 7. Because the victim's claim arises out of some sort of criminal conduct, it is likely it is also a debt generated by fraud, by larceny or embezzlement, or by malicious conduct, all excepted from discharge pursuant to 523(a)(2), (4) or (6). Thus, in Chapter 7, both the debt owed the victim and the debt for restitution will be nondischargeable. Similarly, in Chapter 13, it is clear that the debt owed the victim will be discharged if the plan is confirmed and performed. The policy permitting such debts to be discharged by the broader discharge provisions of Chapter 13 will be frustrated, however, if the parallel criminal restitution obligation (which ultimately benefits the same party) is not also discharged.

This Court is cognizant of the caveat in *Ron Pair* that there are limits to what may constitute "an appropriate case." *United States v. Ron Pair Enterprises, Inc.*, *supra* 109 S.Ct. at 1032. Other courts, both in this District and without, which ultimately reach the conclusion that criminal resti-

tution payments are not debts and are not dischargeable in a Chapter 13, do so without the benefit of the history behind section 523 (except for *Kelly v. Robinson*) and primarily by giving deference to the principle of federalism—"a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings." *Kelly v. Robinson, supra,* 107 S.Ct. at 359. While this Court is both mindful of, and deferential to, the concept of federalism, the competing and countervailing principle must not be forgotten. That is the principle of supremacy.

The United States Supreme Court spoke about the Supremacy Clause in a recent opinion:

> Congress has the power under the Supremacy Clause of Article VI of the Constitution to pre-empt state law. Determining whether it has exercised this power requires that we examine congressional intent. In the absence of explicit statutory language signaling an intent to pre-empt, we infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law, *Rice v. Sante Fe Elevator Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), or where the state law at issue conflicts with federal law, either because it is impossible to comply with both, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963), or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives, *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). See *Schneidewind v. ANR Pipeline Co.,* 485 U.S. [293], 485, 108 S.Ct. 1145, 293, 99 L.Ed.2d 316 (1988); *Louisiana Public Service Comm'n v. FCC,* 476 U.S. 355, 368–369, 106 S.Ct. 1890, 1898–1899, 90 L.Ed.2d 369 (1986); *Pacific Gas & Electric Co. v. Energy Re-*

---

**4.** The language "and is not compensation for actual pecuniary loss" suggests that a bankruptcy court can review the particular statute under which the restitution payments arise and reach a determination that the motive is compensato-

ry and not penal or rehabilitative. Upon reaching that conclusion, restitution in the nature of compensation may be discharged in both a Chapter 7 and a Chapter 13 case.

*sources Comm'n,* 461 U.S. 190, 203–204 103 S.Ct. 1713, 1721–1722, 75 L.Ed.2d 752 (1983). *Northwest Central Pipeline Corp. v. State Corporation Commission of Kansas,* —— U.S. ——, 109 S.Ct. 1262, 1273, 103 L.Ed.2d 509 (1989).

Only Congress can dictate the scope of a discharge in bankruptcy, and only Congress has the constitutional power to provide for the discharge of certain debts and to except other debts from discharge. United States Constitution, Article I, Section 8, Clause 5; *In re Hampton,* 47 B.R. 47 (Bankr.N.D.Ill.1985), citing *Stellwagen v. Klum,* 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507 (1918). Congress, by expressly providing for the discharge under section 1328(a) of *all* debts except those for alimony, maintenance and support and certain obligations of the type set forth in section 1322(b)(5), unequivocally manifested its intent that a debtor in Chapter 13 be afforded a broad discharge in order to encourage that debtor to file under Chapter 13 rather than Chapter 7, and then to complete payments under a plan. The dissent in *Kelly* also recognizes this intention. *Kelly v. Robinson, supra* 479 U.S. at 36, 107 S.Ct. at 353 (dissent). To hold otherwise would permit a state criminal restitution statute to "stand as an obstacle to the accomplishment and execution of congressional objectives." *Northwest Central Pipeline Corp. v. State Corporation Commission of Kansas, supra* 109 S.Ct. at 1273.

This inescapable conclusion is further bolstered by the fact that if a debtor fails to complete payments, but obtains a hardship discharge under section 1328(b), criminal restitution obligations are not discharged. Moreover, the explicit language of section 523(a)(7) ("and is not compensation for actual pecuniary loss") affords the bankruptcy court authority to analyze the underlying purpose of a fine or penalty to insure that state laws do not circumvent this Court's authority to determine what debts are dischargeable by captioning a debt a fine or penalty when its real purpose is to compensate.

This interpretation does not offend the boundaries of state powers. Rather, it strikes the delicate balance between the concepts of federalism and supremacy. Congress not only expanded the definition of "debt" in enacting the Code, but also the availability of Chapter 13. At the same time, states may fashion true criminal remedies which will remain untrammeled by bankruptcy courts.

While it may be argued that the legal conclusions reached by this Court and the Third Circuit fly in the face of policy considerations behind criminal restitution obligations, it is this Court's duty to merely interpret the language of the Code and not to write it. Only Congress can alleviate or cure any defect which exists in the statutes which courts must interpret. As the *Ron Pair* Court observed in that case:

> Congress expressly chose to create that alleged tension (payment of postpetition interest is arguably somewhat in tension with the desirability of paying all creditors as uniformly as practical). There is no reason to suspect that Congress did not mean what the language of the statute says. *United States v. Ron Pair Enterprises, Inc., supra* 109 S.Ct. at 1033.

Here, as in *Ron Pair,* one can only conclude that Congress intended to create the tension between the principles of federalism and supremacy once a finding of good faith has been made and a plan confirmed. When the language of the statute, specifically sections 101(11) and 1328(a), is as plain as it is, there is no reason to suspect that Congress did not mean what section 1328(a) says.

**B.** *Should the Bankruptcy Court Enjoin the State from Conducting Revocation Hearings?*

The procedural posture of this case must be emphasized. First, this case, like *Cullens,* comes before this Court *post-confirmation.* The Defendant did not object to confirmation, despite proper notice. A governmental agency (or the victim) is not precluded by this decision from objecting to confirmation under section 1325, specifically 1325(a)(3), if appropriate facts obtain. Furthermore, if the Debtor defaults under

the plan, the creditor has remedies available to it under section 1307 in the nature of a motion to dismiss or convert the case. Accord, *In re Cullens, supra* 77 B.R. at 828.

Secondly, the 11 U.S.C. § 1328(a) *discharge and related section 524 injunction have not entered* and will not enter until the Debtor completes payments under the plan. In the meantime, however, Debtor is not making payments in the nature of restitution and the state seeks under the applicable criminal statutes to revoke Debtor's probation. Debtor, therefore, has come to this Court seeking injunctive relief pursuant to 11 U.S.C. § 105. The parties have stipulated that whether criminal restitution payments are dischargeable is dispositive of the motion for summary judgment. Notwithstanding this Court's conclusion that criminal restitution payments are debts which are dischargeable, the Debtor in this case is not yet discharged. The issue then becomes, can or should this Court permanently enjoin the state from its criminal enforcement efforts? It is in this context that the principles of federalism must be given greatest respect.

While the stay imposed by 11 U.S.C. § 362(a)(6) remains in effect at this time, section 362(b)(1) excepts from the operation of the automatic stay, the "commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1). This section underscores the policy that "the bankruptcy laws are not a haven for criminal offenders but are designed to give relief from financial overextension. Thus, criminal actions may proceed in spite of bankruptcy." House Report No. 95–595, 95th Congress. First Session. 342 (1977), 1978 U.S.Code Cong. & Admin.News 6299. The exception under section 362(b)(1) is, however, only an exception to the "automatic" stay of section 362(a)(6), and does not foreclose the possibility of the entry of a separate injunction pursuant to 11 U.S.C. § 105. *See, e.g., In re Kaiser Steel Corporation*, 87 B.R. 662 (Bankr.D.Colo.1988).

*Younger v. Harris,* the seminal case on the issue of availability of federal injunctive relief against state criminal prosecutions, held that such relief should be granted only in extraordinary circumstances where the danger of irreparable loss is both great and immediate and where a statute on its face abridges first amendment rights or where a criminal prosecution is conducted in bad faith or for harassment. *Younger v. Harris,* 401 U.S. 37, 53–54, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971); *Barnette v. Evans,* 673 F.2d 1250 (11th Cir.1982); *In the Matter of Tenpins Bowling, Ltd.,* 32 B.R. 474, 480 (Bankr.M.D.Ga.1983). The critical analysis here, therefore, is whether the Debtor has met his burden at this time to show that he will suffer irreparable harm, both great and immediate, and that the threatened proceeding to revoke probation is being conducted in bad faith, thereby entitling the Debtor to a stay under section 105. Although not expressly enunciated in *Younger v. Harris,* implicit in this standard for grant or denial of equitable relief is the principle that the moving party has no adequate remedy at law. *Accord, In re Gilliam,* 67 B.R. 83, 86 (Bankr.M.D.Tenn.1986).

The only material allegation in the Debtor's Complaint or briefs is that it is financially impossible for the Debtor to comply both with the Bankruptcy Court confirmation order and the restitution order of the District Court of Colorado. Debtor asserts that (1) if he is required to do so it will result in either the dismissal of the Chapter 13 confirmed plan or the Debtor's probation being revoked and his liberty being placed in jeopardy, Complaint, ¶ 8; and (2) unless the Defendant, the District Court, is restrained from continuing the enforcement of its current order for restitution described above, irreparable injury, loss or damage will result to the Plaintiff and his creditors, Complaint, ¶ 9.

This Court recognizes that if the state court is allowed to hold the revocation hearing, the risk of incarceration is high.[5]

5. Attached to the brief of the District Court is the order setting out the conditions of proba-

tion. Among the standard conditions listed are:

That risk, however, in and of itself, is insufficient to mandate a finding of irreparable harm at this time. Other courts have noted that the cost, anxiety and inconvenience of having to defend a state criminal proceeding would not constitute irreparable harm. *In the Matter of Tenpins Bowling, Ltd., supra* at 479, citing *Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971). Furthermore, the Debtor has not come to this Court and either asserted or demonstrated in its Brief or otherwise that the State's prosecution is in bad faith, an explicit requirement of *Younger v. Harris.*

The facts presented to the Court show that the Debtor pled guilty to a charge of criminally negligent homicide, a significant felony offense. He spent 27 days in jail when he was injured and unable to perform his obligations under the work release program. The restitution order was entered July 9, 1986, requiring payments of $50 a month. He filed his Chapter 13 proceeding in March 1988, at which time he had paid $838.33 out of a total restitution obligation of $3,047.13. The complaint filed in the State District Court seeking revocation of probation alleges only the failure to make the required restitution payments as grounds for the revocation of discharge.

Under state law the revocation hearing statutes permit the debtor to demonstrate his inability to pay. See, *People of the State of Colorado v. Gore*, 774 P.2d 877, (Colo.1989); *People of the State of Colorado v. Afentul*, 773 P.2d 1081, (Colo.1989); *Strickland v. People of the State of Colorado*, 197 Colo. 488, 594 P.2d 578, 579 (1979); and *People of the State of Colorado v. Romero*, 192 Colo. 106, 559 P.2d 1101, 1102 (1976). The Colorado Supreme Court has noted that revocation of probation is not automatic upon accusation of not making the ordered restitution. *People v. Gore, supra* at 879. Section 16–11–204.-5(2), C.R.S. itself states in pertinent part:

If the defendant fails to pay the restitution, he shall be returned to the sentencing court which, *upon proof of failure to pay,* may:

(a) Modify the amount of the restitution;

(b) Extend the period of probation;

(c) Order the defendant committed to jail with work release privileges; or

(d) Revoke probation and impose the sentence otherwise required by law.

Although Section 16–11–206, C.R.S. cited above (see footnote 5) states that failure to pay shall constitute *prima facie* evidence of a violation, the Colorado Supreme Court has consistently interpreted this provision to mean that when "the prosecution presents this 'prima facie evidence,' the burden shifts to the defendant to establish by a preponderance of the evidence that he was financially unable to make the payments at the time they should have been made." *People v. Afentul, supra* at 1085, citing *Strickland v. People, supra.*

■ While the provisions of the Bankruptcy Code and this Court, through section 105, can shield the Debtor from his obligations to pay his creditors, this Court should not invoke its authority to shield the Debtor from his obligation to pay his debt to society, owed because of his criminal misconduct, *Kelly v. Robinson, supra; United States v. Caddell*, 830 F.2d 36 (5th Cir.1987); *In re Roussin*, 95 B.R. 270 (Bankr.D.N.H.1988), *affd.* 97 B.R. 130

---

5. You shall maintain lawful employment with earnings sufficient to pay the amounts which the court ordered you to pay and you shall not terminate that employment without the consent of your probation officer.

....

9. You shall support your dependents and meet your other financial responsibilities.

Section 16–11–206, C.R.S. which governs the revocation hearing in the event of a violation of a condition of probation reads as follows:

(3) at the hearing, the prosecution has the burden of establishing by a preponderance of evidence the violation of a condition of probation; ... *When, in a revocation hearing, the alleged violation of a condition is the probationer's failure to pay court-ordered ... restitution, evidence of the failure to pay shall constitute prima facie evidence of a violation.* (Emphasis added).

Finally, shortly after the order of sentencing (which included 6 months in a work release program) the Debtor was injured and unable to work, thereby making him unable to pay restitution and meet the conditions of probation. The Debtor was sentenced to serve a portion of his work release sentence in Jefferson County jail until he was able to resume work.

(D.N.H.1989), particularly when he has a forum in which to plead his inability to pay. The State has a justifiable interest in convening a probation revocation hearing for the purpose of considering whether the Debtor at this time has sufficiently paid his debt to society notwithstanding his financial problems. That is not to say that this Court could not act to protect the Debtor in the face of a showing that the State is proceeding in bad faith and is subverting the criminal process solely for the purpose of collecting a debt. *In re Penny*, 414 F.Supp. 1113 (W.D.N.C.1976).[6] Such a showing has not been made, however.

The Bankruptcy Code and the state statutory scheme provide the Debtor remedies to avoid incarceration, presumably the result he desires. Injunctive relief is an extraordinary remedy which should be granted sparingly. *Matter of Tenpins Bowling, Ltd., supra* at 478 citing *Accord, Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In the absence of any showing of the applicability of the exceptions set forth in *Younger v. Harris*, this Court is not only reluctant to, but cannot, grant the relief requested by the Debtor.

Accordingly,

IT IS HEREBY ORDERED that the preliminary injunction entered herein is withdrawn, the request for the entry of a permanent injunction is denied, and this adversary proceeding is dismissed.

---

6. In *Penny* a criminal warrant on a bad check charge was sworn out by a creditor against the debtor after the petition in bankruptcy had been filed. The prosecutor in the criminal action was a private attorney whose fees were paid by the creditor. When the debtor sued in the federal court to restrain the criminal prosecution, the same private attorney, paid for by the creditor, appeared for the state. Under those circumstances the federal court had little trouble finding that the criminal action was "not designed to vindicate the rights of the people of North Carolina. They were instituted to collect a debt." 414 F.Supp. at 1115. Those facts are in stark contrast to the facts confronting this Court.