42 F.3d 986
 63 USLW 2388, 32 Collier Bankr.Cas.2d 520,
Bankr. L. Rep. P 76,222
 In re James David HARDENBERG, Debtor.
James David HARDENBERG, Plaintiff-Appellee,
v.
COMMONWEALTH OF VIRGINIA, DEPARTMENT OF MOTOR VEHICLES;
Commonwealth of Virginia, 19th Judicial District,
Fairfax County General District Court,
Defendants-Appellants.
 No. 93-4183.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 6, 1994.
Decided Dec. 9, 1994.
 
 Larry Gene Crowell, Englewood, OH, for plaintiff-appellee.
 Jeffrey A. Spencer (argued and briefed), Richmond, VA, for defendants-appellants.
 Before: JONES, SILER, and GODBOLD, Circuit Judges.*
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 Defendants-Appellants Virginia Department of Motor Vehicles and the Fairfax County General District Court of Virginia ("Virginia") present the following issue: Do fines and costs, imposed as punishment for state criminal convictions constitute "debts" for purposes of the Bankruptcy Code, so that they are dischargeable in a Chapter 13 bankruptcy proceeding pursuant to 11 U.S.C. Sec. 1328(a)?[1] The bankruptcy court held that state criminal fines and costs are "debts," as defined in 11 U.S.C. Sec. 101,[2] and as such are dischargeable in a Chapter 13 bankruptcy. The district court affirmed the bankruptcy court's decision, and we also affirm.
 
 I.
 
 2
 In 1985, Plaintiff-Appellee James David Hardenberg was convicted of Driving While Intoxicated in the County of Fairfax, Virginia. The Fairfax County Court imposed a fine and costs as punishment for his conviction. Additionally, Hardenberg's driving privileges in Virginia were suspended until he paid the fine, court costs, and a reinstatement fee, and filed proof of financial responsibility. As a result of the suspension in Virginia, the State of Ohio also suspended Hardenberg's driving privileges until he could provide a "Letter of Clearance" from Virginia to the Ohio Bureau of Motor Vehicles.
 
 
 3
 Subsequently, Hardenberg filed a Chapter 13 bankruptcy petition and listed the Fairfax County Court as an unsecured creditor. Hardenberg's Chapter 13 plan provided that the Fairfax County Court would receive twenty percent dividends on its unsecured claim. Despite the payment schedule set forth in the bankruptcy plan, Virginia refused to provide the "Letter of Clearance" until Hardenberg completed the wage earner plan and had been discharged from bankruptcy.
 
 
 4
 On January 6, 1989, Hardenberg commenced an adversary proceeding against Virginia and claimed that Virginia had violated the automatic stay provisions of the bankruptcy code, 11 U.S.C. Sec. 362(a)(6),[3] by failing to reinstate his driving privileges and to issue a "Letter of Clearance." The bankruptcy court considered the action, which was directed at the effect of the automatic stay, to be a core bankruptcy proceeding. Virginia defended its actions on the basis that its refusal to reinstate Hardenberg's driving privileges was a continuation of a criminal action or proceeding against the debtor, and thus within the meaning of the 11 U.S.C. Sec. 362(b)(1)[4] exception to the automatic stay of section 362(a). Although the bankruptcy court ruled that Virginia's actions were not automatically stayed, the court held that Hardenberg's obligation to pay his criminal fine and court costs constituted a "debt" for bankruptcy purposes, subject to discharge upon successful completion of the Chapter 13 plan. Because Hardenberg had, by this time, completed all of his plan payments, the bankruptcy court ordered the issuance of a discharge.
 
 
 5
 Upon the issuance of such discharge, the debtor's obligation to the Commonwealth of Virginia will be discharged, and the injunction of Sec. 524 will become effective. At such time Virginia will be required to reinstate the debtor's driving privileges and to issue a Letter of Clearance.
 
 
 6
 J.A. at 18. The bankruptcy court entered judgment on September 6, 1991, and Virginia appealed to the district court. The district court affirmed the bankruptcy court's decision and held that "criminal fines and penalties are dischargeable in Chapter 13 proceedings, after completion of all payments under the plan." J.A. at 36, 37. This appeal followed.
 
 II.
 
 7
 The question before this court is a question of law or statutory interpretation, and it is reviewed de novo. See United States v. Brown, 915 F.2d 219, 223 (6th Cir.1990) ("A district court engages in statutory construction as a matter of law, and we review its conclusions de novo."); Waxman v. Luna, 881 F.2d 237, 240 (6th Cir.1989) ("Conclusions of law are ... subject to de novo review."); In re Edward M. Johnson & Assocs., Inc., 845 F.2d 1395, 1398 (6th Cir.1988) (stating that decision of district court on questions of law is reviewed de novo ).
 
 
 8
 Virginia claims that the issue in this case carries great significance for the criminal justice systems of all fifty states. The decisions of the lower courts do raise obvious questions about the ability of state courts to impose criminal penalties without fear of interference from federal bankruptcy courts. Emphasizing principles of federalism, the Supreme Court has repeatedly acknowledged the right of state courts to enforce state criminal laws without federal interference.
 
 
 9
 The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States. This Court has emphasized repeatedly "the fundamental policy against federal interference with state criminal prosecutions."
 
 
 10
 Kelly v. Robinson, 479 U.S. 36, 47, 107 S.Ct. 353, 360, 93 L.Ed.2d 216 (1986) (quoting Younger v. Harris, 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971)). The Court has extended this principle to its interpretation of the Bankruptcy Code: "Our interpretation of the Code also must reflect ... a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings." Id.
 
 
 11
 In light of this principle, Virginia contends that the lower courts in this case have incorrectly interpreted the Bankruptcy Code and more particularly the definition of "debt" in 11 U.S.C. Sec. 101(11), and that as a result, the federal courts have impermissibly interfered with Virginia's criminal proceedings. Thus, Virginia asks this court to reverse the decision of district court and hold that fines and costs imposed as punishment for a state criminal conviction are not dischargeable "debts" as defined in Chapter 13 of the Bankruptcy Code. We decline to do so.
 
 
 12
 III. Historical Perspective and Statutory Interpretation
 
 
 13
 Shortly after Congress enacted the Bankruptcy Code in 1978 to replace the Bankruptcy Act of 1898, a California bankruptcy court held that state criminal fines and costs constituted "debts" under the new Bankruptcy Code and that such "debts" could be discharged in a Chapter 13 bankruptcy pursuant to 11 U.S.C. Sec. 1328(a). In re Young, 10 B.R. 17, 19 (Bankr.S.D. Cal.1980). The court arrived at this conclusion because, unlike 11 U.S.C. Sec. 523(a)(7),[5] which specifically excepted criminal fines from discharge in a Chapter 7 bankruptcy, section 1328(a) contained no express provisions excepting state criminal penalties from discharge in a Chapter 13 proceeding. See id. at 18-19; see also In re Smith, 58 B.R. 78, 81 (Bankr.E.D.Pa.1986) (noting that state criminal fine, like traffic citation, would be excepted from Chapter 7 or 11 discharge according to 11 U.S.C. Sec. 523(a)(7), although debtor would be exonerated from paying such debt under Chapter 13 discharge pursuant to 11 U.S.C. Sec. 1328(a)), rev'd on other grounds sub nom. Smith v. Pennsylvania Dept. of Transp., 66 B.R. 244 (E.D.Pa.1986).
 
 
 14
 Furthermore, in 1986, a Tennessee bankruptcy court held that a debtor's obligations to pay a state criminal fine and court costs constituted "debts" for bankruptcy purposes, which were subject to discharge in a Chapter 13 proceeding. In re Gilliam, 67 B.R. 83, 85-86 (Bankr.M.D. Tenn.1986). The court began its analysis by recognizing that, based on statutory language and legislative history, the term "debt" was to be given its broadest possible definition. Id. at 85 (quoting Brown v. Shriver (In re Brown), 39 B.R. 820, 822 (Bankr.M.D. Tenn.1984) (citing 11 U.S.C.A. Secs. 101(4) and 101(11) (West 1979); S.Rep. No. 989, 95th Cong., 2d Sess. 21-22, reprinted in 1978 U.S.C.C.A.N. 5787, 5808; H.R.Rep. No. 595, 95th Cong., 1st Sess. 309, reprinted in 1978 U.S.C.C.A.N. 5963, 6266)). This meant that the term "debt" should include all payment obligations, however incurred. Id.
 
 
 15
 Additionally, the court found that the statutory language of 11 U.S.C. Sec. 523(a)(7), see supra note 5, compelled the conclusion that state criminal fines were "debts" for bankruptcy purposes. Id. Congress' use of the terms "debt" and "fine" in this statute, clearly revealed to the court that fines payable to a governmental unit were "debts" under the Bankruptcy Code. Id. at 85-86.
 
 
 16
 Finally, because Congress did not include a discharge exception in 11 U.S.C. Sec. 1328(a) (Chapter 13 proceeding) parallel to the specific exception from discharge in 11 U.S.C. Sec. 523(a)(7) (Chapter 7 proceeding), the court held that state criminal fines and court costs were debts subject to discharge in a Chapter 13 bankruptcy. Id. at 86. Thus, the court found that the discharge in a Chapter 13 case, after the completion of all payments under a confirmed plan, was broader than the discharge available under Chapter 7. Id.
 
 
 17
 One month after the Gilliam decision, however, the Supreme Court rendered its decision in Kelly v. Robinson, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). Although the Kelly decision considered restitution orders of state criminal courts rather than fines, and although Kelly was a Chapter 7 case instead of a Chapter 13 case, Virginia argues that the analysis of the Court in Kelly is directly applicable to the question considered in this case--whether state criminal fines are debts that can be discharged under the Bankruptcy Code.
 
 
 18
 The Court in Kelly began its analysis by noting that the provisions of Chapter 7 had to be considered "in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems." Id. at 43-44, 107 S.Ct. at 357-58. To illustrate why courts have been reluctant to interpret federal bankruptcy statutes to remit state criminal judgments, the Court reviewed the history of the Bankruptcy Code, beginning with its precursor, the Bankruptcy Act of 1898 ("Act"). Id. at 44, 107 S.Ct. at 358. After this survey, the Court concluded that the most natural reading of the Act would have allowed federal courts to discharge criminal penalties in bankruptcy proceedings. Id. at 44-45, 107 S.Ct. at 357-58. Virtually all the federal courts, however, refused to interpret the Act in this way, and they would not allow a discharge in bankruptcy to affect a state criminal court's judgment. Id.; see, e.g., In re Moore, 111 F. 145, 148-49 (W.D.Ky.1901). Thus, the Court found that Congress enacted the Bankruptcy Code in 1978 against the background of an established, judicially created exception to discharge for criminal penalties. Id. 479 U.S. at 46, 107 S.Ct. at 359. In fact, because of this historical precedent, the Court noted in dictum that it had "serious doubts" that Congress intended to make criminal penalties "debts" within the meaning of 11 U.S.C. Sec. 101(4) (1988). Id. at 50, 107 S.Ct. at 361. The Court made this statement fully realizing that the Code's definition of "debt" was broadly drafted, see supra note 2, and that the legislative history supported a broad reading. 479 U.S. at 50 n. 12, 107 S.Ct. at 361 n. 12.
 
 
 19
 With this context in mind, the Kelly Court analyzed whether restitution orders of state criminal courts could be discharged as "debts" under Chapter 7 of the Bankruptcy Code. The Court delineated its method of statutory interpretation as follows:
 
 
 20
 "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. The court has followed this rule with particular care in constructing the scope of the bankruptcy codifications. If Congress wishes to [change a judicially created exception], 'the intention would be clearly expressed....' "
 
 
 21
 Id. at 47, 107 S.Ct. at 359 (quoting Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection, 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986) (quoting Swarts v. Hammer, 194 U.S. 441, 444, 24 S.Ct. 695, 696, 48 L.Ed. 1060 (1904))). The statutory provision at issue in Kelly was 11 U.S.C. Sec. 523(a)(7), and the Court recognized that this provision, in essence, codified the judicially created exception to discharge for criminal fines. Id. at 51, 107 S.Ct. at 362. Thus, instead of changing the judicially created precedent, Congress had expressly adopted it for Chapter 7 proceedings. The only question to be addressed, therefore, was whether criminal court ordered restitution was like a traditional fine or whether it was made subject to discharge because it was paid to the victim as compensation for loss. See id. The court found it was more like a criminal fine and held that court ordered restitution could not be discharged as a "debt" under a Chapter 7 bankruptcy because section 523(a)(7) preserved from discharge any condition that a state criminal court imposed as part of a criminal sentence. Id. at 50, 52, 107 S.Ct. at 361, 362.
 
 
 22
 Relying on the Court's dictum in Kelly, regarding doubt over Congress' intent to make criminal penalties debts for purposes of the Bankruptcy Code, and relying on the Court's historical analysis, which provided support for the dictum, Virginia argues that state criminal fines and costs are not "debts" under the Bankruptcy Code. Thus, Virginia contends that they should not be discharged under any provision of the Code. In fact, Virginia claims that this conclusion is so clearly advocated in Kelly that subsequent to Kelly, "the courts have been unanimous in holding that fines and costs are not 'debts' as that term is defined in Sec. 101(4) of the Code, and therefore are not dischargeable in Chapter 13--until the decisions in this case." Virginia Br. at 14; see In re Norman, 95 B.R. 771 (Bankr.D. Colo.1989) ("[T]his Court is convinced that duly assessed criminal fines and penalties, which are of a punitive, remedial, or rehabilitative nature, are not debts as defined in the Bankruptcy Code and are not dischargeable in Chapter 13."); In re Ferris, 93 B.R. 729 (Bankr.D. Colo.1988) (holding that confirmation of Chapter 13 plan does not convert state criminal fine into debt that can be dealt with or discharged in Chapter 13 case); In re Kohr, 82 B.R. 706 (Bankr.M.D.Pa.1988) (holding that strong principles enunciated in Kelly case are totally inconsistent with discharge of criminal penalties in Chapter 13 case because fines, penalties, forfeitures, or restitution are not debts).
 
 
 23
 Virginia's statement, however, is not accurate. Since Kelly, several courts have noted that state criminal fines are debts within the meaning of the Bankruptcy Code and have stated that they are not excepted fromdischarge in a Chapter 13 proceeding pursuant to 11 U.S.C. Sec. 1328(a). See In re Edwards, 132 B.R. 400, 403 & n. 4 (Bankr.E.D. Ark.1991) (stating that state criminal fine is not excepted from Chapter 13 superdischarge under 11 U.S.C. Sec. 1328(a) and that 1990 amendments to Chapter 13 except only debts for restitution and do not mention government fines covered by 11 U.S.C. Sec. 523(a)(7)). In 1989, a Colorado bankruptcy court, Erickson v. District Court of Colorado (In re Erickson), 104 B.R. 364, 369 (Bankr.D. Colo.1989), held that state criminal restitution orders could be discharged in a Chapter 13 proceeding pursuant to 11 U.S.C. Sec. 1328(a). Although this holding is no longer valid due to an amendment of section 1328(a), see infra for discussion and supra note 1, the court's analysis regarding the dischargeability of criminal fines is still valid. In pertinent part, the court stated the following:
 
 
 24
 The language in section[ ] 523(a) unambiguously excepts from a Chapter 7 discharge, inter alia, debts for criminal fines and penalties.... A Chapter 13 discharge, however, upon completion of payments, only excepts from discharge debts in the nature of alimony, maintenance and support, and certain secured payments. All other debts are discharged. Accordingly, this Court must conclude this is that appropriate case where Congress intended to change a judicially created exception and did so by expressly permitting a debtor to discharge a debt in a completed Chapter 13 even though it is a fine....
 
 
 25
 104 B.R. at 369-70. Accord Cullens v. District Court for Colorado (In re Cullens), 77 B.R. 825, 827-28 (Bankr.D. Colo.1987).
 
 
 26
 The Supreme Court addressed the issue that the bankruptcy court faced in Erickson just one year later in Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). Despite the Court's holding in Kelly that state criminal restitution orders were not dischargeable in a Chapter 7 proceeding, Justice Marshall, writing for the majority, held that with respect to Chapter 13 proceedings, Congress intended court ordered restitution to be considered a "debt" under the Code and thus dischargeable under 11 U.S.C. Sec. 1328(a). Justice Marshall found this clear congressional intent for Chapter 13 proceedings both in 11 U.S.C. Sec. 1328(a) (see supra note 1 for text of statute), which did not contain the "fine, penalty, or forfeiture" exception from discharge listed in section 523(a)(7), and in the broad definition of "debt" that Congress had adopted in 11 U.S.C. Secs. 101(4), 101(11) (1988) (see supra note 2 for text of these statutes). Id. at 563-64, 110 S.Ct. at 2133-34.
 
 
 27
 Pertaining to our analysis of whether Congress intended criminal fines to be debts, Justice Marshall highlighted the tension between Kelly's interpretation of section 523(a)(7) and its dictum suggesting that criminal penalties were not debts. Id. at 562, 110 S.Ct. at 2132-33. The Kelly Court explicitly found that section 523(a)(7) codified the judicially created exception to discharge for criminal fines. 479 U.S. at 51, 107 S.Ct. at 362. But section 523(a)(7) only applies to "debts." See supra note 5 for text of statute. Thus, the Court's holding in Kelly and its dictum seem quite incongruous. If Congress had believed that criminal fines were not "debts" giving rise to "claims," it would have had no reason to except such obligations from discharge in section 523(a)(7). Thus, if this court were to follow the Kelly dictum in a Chapter 13 proceeding and hold that Congress did not intend criminal fines to be debts, it would render superfluous Congress' plain language in section 523(a)(7). As Justice Marshall noted in Davenport, "[o]ur cases express a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment." 495 U.S. at 562, 110 S.Ct. at 2133 (citing Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988)).
 
 
 28
 Although not applicable to the case before us, subsequent to the Davenport decision, Congress enacted a bill to amend section 1328(a), specifically exempting restitution orders from discharge in Chapter 13 bankruptcies and thereby superseding the Court's holding in Davenport. See supra note 1. Accordingly, it is clear from this Congressional action and from the legislative history that accompanied the amendment to section 1328(a) that Congress did not intend bankruptcy courts to be able to discharge state criminal court restitution orders in either Chapter 7 or 13 cases.[6]
 
 
 29
 Conspicuously, however, Congress did not supersede the Court's determination that criminal fines and restitution orders are "debts" for purposes of the Bankruptcy Code. In fact, by adding an exception for restitution orders to the discharge provision of 11 U.S.C. Sec. 1328(a), Congress reaffirmed the Court's determination in Davenport that criminal fines and restitution orders were debts for purposes of the Bankruptcy Code because section 1328(a), like section 523(a)(7), only applies to debts. See 11 U.S.C. Sec. 1328(a) (1988 & Supp. V 1993) ("[T]he court shall grant the debtor a discharge of all debts provided for by the plan...."). Moreover, Congress did not amend section 1328(a) to except state criminal fines; it only excluded restitution orders from discharge under Chapter 13.
 
 
 30
 Thus, although contrary case law does exist, we believe that Congress, through the plain language of the applicable provisions of the Bankruptcy Code, has indicated that state criminal fines are "debts," which cannot be discharged in a Chapter 7 proceeding, pursuant to 11 U.S.C. Sec. 523(a)(7), but which can be discharged in a Chapter 13 proceeding, pursuant to 11 U.S.C. Sec. 1328(a).[7] One commentator has iterated the following policy rationale for this distinction:
 
 
 31
 [T]he dischargeability of debts in chapter 13 that are not dischargeable in chapter 7 represents a policy judgment that [it] is preferable for debtors to attempt to pay such debts to the best of their abilities over three years rather than for those debtors to have those debts hanging over their heads indefinitely, perhaps for the rest of their lives.
 
 
 32
 5 Collier on Bankruptcy p 1328.01[c] (15th ed.1994) (footnotes omitted).
 
 
 33
 Like the Court in Davenport, we have not lightly determined that Congress intended to interfere with the States' administration of their criminal justice systems. Davenport, 495 U.S. at 564, 110 S.Ct. at 2133 (citing Younger v. Harris, 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971)). We realize that permitting the discharge of state criminal fines under a Chapter 13 proceeding may impair the manner in which state criminal judges fashion appropriate sentences, and it may force state prosecutors to participate in federal bankruptcy proceedings to safeguard state interests. "Nonetheless, the concerns animating Younger cannot justify rewriting the Code to avoid federal intrusion. Where, as here, congressional intent is clear, our sole function is to enforce the statute according to its terms." Id.
 
 IV.
 
 34
 Based on the foregoing analysis, we hold that the bankruptcy court, pursuant to 11 U.S.C. Sec. 1328(a), properly discharged Hardenberg's criminal fine and costs, which Virginia imposed for his violation of state law. Therefore, we AFFIRM the decision of the district court, and we ORDER the Appellants both to reinstate Hardenberg's driving privileges in the Commonwealth of Virginia and to issue an appropriate "Letter of Clearance."
 
 
 
 *
 The Honorable John C. Godbold, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation
 
 
 [1]
 This section reads as follows:
 (a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt--
 (1) provided for under section 1322(b)(5) of this title; or
 (2) of the kind specified in section 523(a)(5) of this title.
 11 U.S.C. Sec. 1328(a) (1988). This section provides exceptions from discharge for only four types of "debts," so long as the debtor successfully completes his Chapter 13 plan and qualifies for discharge under Sec. 1328(a). The four types of "debts" are alimony, maintenance, or support, and certain long term obligations listed under the plan. Note that 11 U.S.C. Sec. 1328(a) was amended in 1990 as a response to the Supreme Court's decision in Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). The amendment added an exception for restitution included in a criminal sentence, see 11 U.S.C. Sec. 1328(a)(3) (Supp. V 1993), but the amended version does not apply to cases commenced under Title 11 before November 1990, see id. The bankruptcy adversary proceeding that led to this appeal was commenced on January 6, 1989. Thus, 11 U.S.C. Sec. 1328(a) (1988) applies to this appeal.
 
 
 [2]
 Under the Bankruptcy Code, the term "debt" is defined as a "liability on a claim." 11 U.S.C. Sec. 101(11) (1988) (subsection was renumbered 101(12) in 1990). The term "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. Sec. 101(4) (1988) (subsection was renumbered 101(5) in 1990)
 
 
 [3]
 This provision automatically stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. Sec. 362(a)(6) (1988)
 
 
 [4]
 This section provides in pertinent part that the filing of a petition in bankruptcy does not operate as a stay of "the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. Sec. 362(b)(1) (1988)
 
 
 [5]
 Section 523(a)(7) read as follows:
 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
 ....
 (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss
 ....
 11 U.S.C. Sec. 523(a)(7) (1988).
 
 
 [6]
 The Senate Report (Judiciary Committee) to accompany Senate Bill 1931 stated the following:
 [T]his amendment will have the effect of overruling the Supreme Court's recent decision in Pennsylvania Department of Public Welfare v. Davenport, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), which held that criminal restitution obligations are dischargeable debts under Chapter 13.... Importantly, these provisions will prevent Federal bankruptcy courts from invalidating the results of State criminal proceedings.
 S.Rep. No. 434, 101 Cong., 2d Sess. 8, reprinted in 1990 U.S.C.C.A.N. 4065, 4071. In addition, the House of Representatives Report stated the following:
 Section 1902 responds to the May 29, 1990 Pennsylvania Department of Public Welfare v. Davenport decision, in which the Supreme Court of the United States ruled that criminal restitution debts are dischargeable upon completion of a Chapter 13 reorganization plan. Section 1902 corrects this result by adding a new paragraph (3) to Section 1328(a) so that criminal restitution payments will be nondischargeable in Chapter 13. Section 1902 is not intended to alter in any way the coverage of section 523(a)(7), as that paragraph has been interpreted in Kelly v. Robinson, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), to make criminal restitution obligations nondischargeable in Chapter 7. As a result of the change made in Section 1902, no debtor with criminal restitution obligations will be able to discharge them through any bankruptcy proceeding.
 H.R.Rep. No. 681(I), 101 Cong., 2d Sess. 165, reprinted in 1990 U.S.C.C.A.N. 6472, 6571.
 
 
 [7]
 But see 18 U.S.C. Sec. 3613(f) (1988)(stating that federal criminal fines are not subject to discharge in any bankruptcy proceeding)